UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____–Civ-_____

CANADIAN STEEL, INC.

    Plaintiff,

vs.

HFP CAPITAL MARKETS, LLC and
GEOFFREY BYRUCH,

    Defendants.

_____/

## PLAINTIFF'S VERIFIED COMPLAINT

**COMES NOW** Plaintiff, CANADIAN STEEL, INC., (hereinafter "CSI") by and through its undersigned counsel, files this Complaint against Defendants, HFP CAPITAL MARKETS, LLC (hereinafter "HFP") and Geoffrey Byruch (hereinafter "BYRUCH"), and states as follows:

### I. Introduction

1. Plaintiff brings forth this civil action against Defendants for interference with contractual relations, interference with prospective business advantage, for the intentional remarks and actions to Plaintiff's contracted third party capital finance funding partner and vertical precious metal feedstock supplier; regarding the contract to design, build, engineer, and fabricate seven (7) Plasma-based Metallurgic Recovery Systems; and such intentional and direct actions and efforts to interfere and derail Plaintiff's contractual relations with third parties such as to complicate the fulfillment of pre-existing contractual obligations to Plaintiff.

1

## II. Jurisdiction and Venue

2. This Court has personal jurisdiction as Plaintiff brings this action for Defendant's "tortious acts," pursuant to § 48.193(1)(b), Florida Statutes (2011), which have resulted in irreparable injury to Plaintiff, a Florida corporation. Defendant HFP's website and service are freely accessible to Florida residents and, as such, personal jurisdiction is also proper because HFP is "operating, conducting, engaging in, or carrying on a business venture" in Florida under 48.193(1)(a).

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) conferring diversity jurisdiction in federal court where parties are citizens of different states and the amount in controversy exceeds $75,000.00. Declaratory relief is authorized by 28 U.S.C. § 2201 and 2202, and injunctive relief pursuant to Fed. R. Civ. P. 65.

4. Venue is proper in this District under 28 U.S.C. § 1391.

## III. Parties

5. At all times material hereto, Plaintiff, CSI, is a Florida corporation registered with the State of Florida, with its principal place of business located at 12540 NW South River Drive Medley, Miami, FL 33178.

6. At all times material hereto, Defendant, HFP, upon information and belief, is a New York Limited Liability Company with its principal place of business located at 685 Fifth Avenue, 9th Floor, New York, NY 10022.

7. At all times material hereto, Defendant, BYRUCH, upon information and belief, has been employed by HFP and is a New Jersey resident, maintaining his domicile and holding his primary state citizenship within the State of New Jersey.

## IV. Facts

8. CSI is in the business of providing advance thermal processing systems including, but not limited to, plasma-based elemental reclamation technology for use, among other purposes, in recovering precious and noble metals from complex ore concentrates. CSI designs, engineers and fabricates steel structures and thermal equipment; including, but not limited to, thermal processing chambers, isothermal reactors, pressure vessels, heat recovery systems, plasma arc reactors, and other energy sector equipment and processing systems. Along with its principal place of business in Miami, Florida, CSI has also has satellite joint relationship facilities in Hitchcock, TX, and in Niagara Falls, Canada.

9. On or about August 31, 2010, CSI entered into an Equipment Design Build Engineer and Fabricate Contract with Worldwide Mining Partners, LLC (hereinafter "WMP"), whereby WMP was to contract with CSI to design, build, engineer and fabricate seven (7) plasma-based metallurgic recovery units to be strategically placed at WMP precious metal mining locations throughout the United States and Mexico. The contract price was quoted at a price of Forty-Seven Million Dollars ($47,000,000.00 USD).

10. Subsequently, CSI entered into negotiations with the President of WMP, Jerry Pane, to build an additional three (3) plasma-based metallurgic recovery units to be placed at additional WMP precious metal mining locations. The contract price for these second-generation plasma-based systems would be at the price of Twenty-One Million Dollars ($21,000,000.00 USD).

11. In the month of March, 2011, HFP, by and through its then-Chief Executive Officer ("CEO"), approached WMP to offer a business relationship in which WMP would provide high-grade, precious metal ore concentrate to a client of HFP that was engaged in recovering precious metal through the use of plasma-based technology.

12. HFP's then-CEO made further communications with WMP's President, whereby he disclosed that HFP had raised public funds for one of its clients in the precious metal recovery business and that communication with a client's chief science officer, known as Dr. John Voorhees, had gone silent and Mr. Voorhees could not be reached.

13. Additionally, HFP inquired of WMP's President, Jerry Pane, as to whether WMP would be willing to enter into an agreement with HFP to ensure a sufficient feedstock of precious metal concentrate if the ore concentrate HFP was holding was insufficient to yield a value to repay its client's outstanding debt instruments.

14. Based upon information and reasonable belief, WMP declined HFP's offer and stated that it was pursuing a contract with CSI to build multiple plasma-based metallurgic recovery systems.

15. On or about March 2011, HFP's then-CEO contacted CSI's President and asked if he would talk with WMP and try to convince WMP to agree to work with HFP's client that had a potential problem.

16. CSI's President acknowledged the plight of HFP, but respectfully declined to use any of his social equity to leverage its relationship with WMP to convince WMP to do business with an HFP client in need.

17. Defendant, HFP, as a licensed investment brokerage firm and operating as a broker/dealer with other clients which are pursuing the same technological goals and with intimate knowledge of each other, possessed certain and definite knowledge that Plaintiff, CSI, was actively negotiating a contract to design and sell seven (7) additional advanced thermal processing systems to WMP that CSI would design, along with its design team partners, engineer and fabricate seven upgraded plasma-based metallurgic recovery systems to be placed at mining locations as per WMP's designation.

18. In or about June 2011, HFP went through a change of its Chief Executive Officer ("CEO"), at which time BYRUCH obtained the CEO position at HFP.

19. Based upon information and reasonable belief, BYRUCH, in his capacity as CEO of HFP, once again directly contacted WMP's President and made an attempt to acquire an exclusive business relationship with WMP.

20. Based upon information and reasonable belief, BYRUCH, in his capacity as CEO of HFP, travelled to North Carolina to visit a plasma-based thermal processing facility that could potentially preform the thermal processing that HFP desired for its client.

21. Based upon information and reasonable belief, the purpose of BYRUCH's trip to North Carolina was to create a relationship with a chief plasma physicist to utilize in performing plasma-based thermal processing.

22. BYRUCH, in his capacity as CEO of HFP, tried to convince WMP President, Jerry Pane, to do business with one of HFP's clients and that it was a real emergency.

23. WMP declined to assist HFP and cited in specific the business relationship it had and was further developing with CSI for the purpose to process precious metal ore concentrate from mines that were owned by WMP.

24. WMP stated that, absent the business it had with CSI to build and process, it would have entertained a co-venture agreement with HFP's client, but, at this time, it was overwhelmed with the business it had before it.

25. Based upon information and reasonable belief, BYRUCH, in his capacity as CEO of HFP, with knowledge and malice, made numerous false and defamatory statements about CSI to WMP and other persons and/or other entities including, but not limited to, Joseph Spano of U.S. Precious Metals, and various employees of HFP.

26. On or about August 30, 2011, BYRUCH, in his capacity as CEO of HFP, approached Jerry Pane, President of WMP, at a charity event at the Jacob Javits Convention Center in New York, NY, whereby BYRUCH approached Mr. Pane and made various statements concerning CSI.

27. BYRUCH, in his capacity as CEO of HFP, with knowledge and malice, made numerous false and defamatory statements to the President of WMP, Jerry Pane, about CSI, including that CSI is only a website and not a "real business."

28. BYRUCH, in his capacity as CEO of HFP, with knowledge and malice, stated to the President of WMP, Jerry Pane, that CSI has no experience in steel fabrication, and that CSI is not qualified to design, fabricate or construct the equipment that WMP sought to purchase under a prior existing contract and an ancillary contract in negotiations at that time.

29. Further, BYRUCH, with knowledge and malice, in his capacity as CEO of HFP, stated to the President of WMP, Jerry Pane, that CSI's President, George Mesa, Sr., is a fraud and has no experience in steel fabrication.

30. BYRUCH, with knowledge and malice, in his capacity as CEO of HFP, stated to the President of WMP, Jerry Pane, that CSI's President, George Mesa, Sr., is not qualified to fulfill the contract with WMP or any future contacts.

31. BYRUCH, with knowledge and malice, in his capacity as CEO of HFP, made numerous false and defamatory statements about CSI to the President of WMP, Jerry Pane, including, but not limited to, that CSI does not have a fabrication facility, that CSI does not have any experience in steel fabrication, that CSI is a complete "fraud," and that WMP is being defrauded by continuing to do business with CSI and George Mesa, Sr.

32. By his actions, BYRUCH, in his capacity as CEO of HFP, attempted to develop a business relationship with WMP at the cost of CSI's business relationship, business contracts, and further anticipated business between the parties.

33. By his actions, BYRUCH, in his capacity as CEO of HFP, made the aforementioned false and defamatory statements for the purpose of derailing agreements between WMP and CSI and ancillary contractual negotiations that would work against BYRUCH's plan to collaborate in a business endeavor with WMP.

34. In the alternative, even if BYRUCH, in his capacity as CEO of HFP, had no true plans to pursue a business endeavor with WMP in the long-term, the false and defamatory statements about CSI and its President, George Mesa, Sr., were to serve no other purpose than to derail and obfuscate the contractual relationship between WMP and CSI.

35. Based upon information and reasonable belief, BYRUCH, in his capacity as CEO of HFP, initiated numerous phone conversations with WMP asserting that CSI is not qualified to build a plasma system, lacks the fundamental knowledge and know-how to fulfill its contractual obligations, and that WMP and its funding source would be better off ending the relationship with CSI and its co-venture partner, Plasma Arc, and pursue a new joint relationship with BYRUCH and HFP.

36. BYRUCH, in his capacity as CEO of HFP, made numerous phone calls to WMP executives to meet with Defendants for purposes of furthering Defendants' scheme to obfuscate, circumvent and intentionally cause WMP to terminate contractual obligations with Plaintiff.

37. As a result of Defendants' malicious intent and numerous intentional communications of false and derogatory statements and acts of contractual interference, WMP has terminated and canceled the contract by and between CSI and WMP for the seven (7) advanced thermal

processing systems as a direct result of the tortious and defamatory statements told by Defendants to WMP.

38. Further, as a result of Defendants' malicious intent and numerous intentional communications of false and derogatory statements and acts of contractual interference, WMP has ceased any further contractual negotiations by and between the CSI and WMP for the three (3) ancillary advanced thermal processing systems as a direct result of the tortious and defamatory statements told by Defendants to WMP.

## FIRST CLAIM FOR RELIEF

### Tortious Interference with Contractual Relations

39. Plaintiff hereby realleges and incorporates by reference each and every allegation set forth at paragraphs 1 through 38, above, as though fully set forth herein.

40. In order to prevail in an action for Tortious Interference of Contractual Relations, one must show (1) the existence of an enforceable contract, (2) the Defendant's knowledge of that contract, (3) an intentional and unjustified interference by the defendant with the plaintiff's rights under the contract, and (4) resulting damages.

41. CSI had entered into a contract with WMP on or about August 31, 2010, whereby CSI was to design, build, engineer and fabricate seven (7) plasma-based metallurgic recovery units to be strategically placed at WMP precious metal mining locations throughout the United States and Mexico.

42. As outlined earlier in this Complaint, Defendants clearly knew about the contract and relationship between CSI and WMP. Defendants' acts were designed to disinterest WMP from going forward with the contracted project and structure its own business relationship for

Defendants' sole and exclusive economic and business interests for which Defendants have no justification, privilege, nor excuse.

43. Defendants, by and through their actions and statements, intentionally and unjustifiably interfered with the contractual relation between CSI and WMP without any justification or privilege.

44. As a direct result of Defendants' malicious actions, WMP terminated and canceled the contract by and between CSI and WMP for the seven (7) advanced thermal processing systems, which was quoted at a price of Forty-Seven Million Dollars ($47,000,000.00 USD).

45. As a result of the termination and cancelling of the contract entered into between CSI and WMP, the Plaintiff has suffered damages in an amount not less than this contract price of $47,000,000.00 USD.

## SECOND CLAIM FOR RELIEF

### Tortious Interference with Business Relationship

46. Plaintiff hereby realleges and incorporates by reference each and every allegation set forth at paragraphs 1 through 38, above, as though fully set forth herein.

47. In order to prevail in an action for Tortious Interference with Business Relationship, one must show (1) Plaintiff has a business relationship, not necessarily evidenced by an enforceable contract, (2) Defendant has knowledge of the relationship, (3) Defendant intentionally and unjustifiably interfered with the relationship, and (4) Plaintiff suffered damages.

48. Plaintiff had a legitimate, identifiable, and undeniable business relationship that was interfered with by HFP and BYRUCH. Plaintiff had a contract with WMP for seven (7) advanced thermal processing systems, and was in further contractual negotiations with WMP for the three (3) ancillary advanced thermal processing systems.

9

49. BYRUCH and HFP did such acts with a conscious desire to prevent Plaintiff's business relationships from matriculating and knew the interference was substantially certain to derail or disrupt the business relationships of Plaintiff.

50. BYRUCH and HFP were aware of Plaintiff's prospective business advantage and, by engaging in the unjustified conduct described more fully described in the aforementioned paragraphs, Defendants intentionally, improperly, and unjustifiably interfered with Plaintiff's prospective business efforts without any justification or privilege.

51. As a direct result of Defendants' malicious actions, WMP terminated and canceled the contract by and between CSI and WMP for the seven (7) advanced thermal processing systems, which was quoted at a reduced price of Forty-Seven Million Dollars ($47,000,000.00 USD). Given this, the Plaintiff has suffered damages in an amount not less than this contract price of $47,000,000.00 USD.

52. In addition, as a direct result of Defendants' malicious actions, WMP has ceased any further contractual negotiations by and between the CSI and WMP for the three (3) ancillary advanced thermal processing systems as a direct result of the tortious actions by Defendants. This contract was agreed to carry a price of Twenty-One Million Dollars ($21,000,000.00 USD). Given this, the Plaintiff has suffered damages in an amount not less than this contract price of $21,000,000.00 USD.

## THIRD CLAIM FOR RELIEF

### Defamation

53. Plaintiff hereby realleges and incorporates by reference each and every allegation set forth at paragraphs 1 through 38, above, as though fully set forth herein.

54. Defendants, BYRUCH and HFP, without justification or privilege, made false statements pertaining to Plaintiff, harmed Plaintiff's reputation amongst its contract partners, and deterred third parties from associating and dealing with Plaintiff and furthering its contractual relationship.

55. By the statements detailed above in the paragraphs above, Defendants have committed multiple acts of defamation against CSI. Those statements were false and defamatory statements of fact, published to third parties, and made with knowledge of their falsity or with reckless disregard for the truth.

56. Defendants' defamatory statements have caused reputational and economic injury to CSI, including a loss of contract with WMP and loss of a further business opportunity with WMP. The defamatory statements by Defendants to WMP executives and contracted partners injured CSI in its trade and profession and attributed false conduct, characteristics, or conditions incompatible with the proper exercise of Plaintiff's lawful trade and business.

57. In addition, because the statements of Defendants were made with both actual malice and express malice and despite knowledge of a high probability that injury or damage would result, CSI is entitled to punitive damages.

58. Until the continued false and defamatory statements stop, Defendants' conduct will cause serious and irreparable harm to CSI, including harm to CSI's reputation, credibility and good will.

59. Defendants' false and malicious statements were intended to cause monetary loss and BYRUCH should have recognized and known that his statements would result in monetary and contractual loss to Plaintiff.

## FOURTH CLAIM FOR RELIEF

### Injunctive and Declaratory Relief

60. Plaintiff hereby realleges and incorporates by reference each and every allegation set forth at paragraphs 1 through 38, above, as though fully set forth herein.

61. As a direct result of the foregoing conduct by Defendants, Plaintiff has sustained and will continue to sustain irreparable damage to his business and has no other adequate remedy at law[1] to prevent repeated unfounded interference with his contracts and business relationships by Defendants. As such, CSI is entitled to an injunction enjoining Defendants and its officers, agents, directors, employees, licensees and all other persons acting by, through, or in concert with Defendants, from engaging in further acts interfering with his existing business, CSI, its funding group, and its plasma engineers and physicists.

62. Furthermore, an actual, present, and substantial controversy exists between the parties, and a declaration as to the respective rights and duties of the parties, pursuant to 28 U.S.C. §§ 2201 and 2202, is necessary and appropriate.

---

[1] Although a portion of this cause of action is for damages, CSI has other contracts with this client and capital funding partner, and additionally has several contracts throughout the world. This is why injunctive relief is also appropriate as CSI's business can be irreparably harmed in perpetuity if the interference with its funders and physicists continues.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff having set forth his claims for relief against the Defendants respectfully prays of the Honorable Court as follows:

a. Award Plaintiff compensatory damages from the Defendants, and each of them, plus prejudgment interest thereon, according to proof or by operation of law not less than $47,000,000.00;

b. Award Plaintiff punitive damages to the extent allowed by law and in an amount according to proof;

c. Award Plaintiff preliminary and permanent injunctive and declaratory relief;

d. Award Plaintiff recovery against the Defendant of all reasonable legal fees and expenses incurred by their attorney allowed by law; and,

e. Award Plaintiff such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury as to all issues so triable.

Dated: October 7, 2011

Respectfully Submitted,

/s/ John C. Webb, Esq.
John C. Webb, Esq. (Fla. Bar No. 48601)
johnwebblegal@gmail.com
P.O. Box 60832
Fort Myers, FL 33906
Telephone: 941-404-5313
Fax: 1-888-465-7258
Attorney for Plaintiff Canadian Steel, Inc.

## VERIFICATION

I have read the factual allegations contained in the foregoing Complaint and I declare under penalty of perjury under the law of the United States of America that these factual allegations are true and correct, and for those allegations that are based upon information and belief, I believe those to be true and correct.

Dated: __Oct-7-2011__       By: _____

George Mesa, Sr.

President, Canadian Steel, Inc.

State of Florida
County of __DADE__

SWORN TO AND SUBSCRIBED before me this __7__ day of __Oct__, 2011.

_____
NOTARY PUBLIC

Notary Public State of Florida
Constance Boyd
My Commission DD962647
Expires 03/24/2014

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served via CM/ECF on October 7, 2011 on all counsel or parties of record on the Service List below.

                                              /s/ John C. Webb, Esq.
                                                    Attorney Name

### SERVICE LIST

| | |
|---|---|
| HFP Capital Markets, LLC | Geoffrey Byruch |
| 685 Fifth Avenue, 9th Floor | 685 Fifth Avenue, 9th Floor |
| New York, NY 10022 | New York, NY 10022 |
| Defendant | Defendant |