**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 11-23650–CIV-ALTONAGA/SIMONTON**

CANADIAN STEEL, INC.

      **Plaintiff,**

vs.

HFP CAPITAL MARKETS, LLC and
GEOFFREY BYRUCH,

      **Defendants.**

_____/

**PLAINTIFF CANADIAN STEEL, INC.'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE VERIFIED
COMPLAINT, OR IN THE ALTERNATIVE TO TRANSFER THIS ACTION**

COMES NOW, the Plaintiff, Canadian Steel, Inc. (hereinafter "CSI" or "Plaintiff"), by and through the undersigned counsel, in response to Defendants, HFP Capital Markets (hereinafter "HFP") and Geoffrey Byruch (hereinafter "BYRUCH," and together with HFP, the "Defendants"), Motion to Dismiss the Verified Complaint, or in the Alternative to Transfer this Action (hereinafter referred to as the "Motion to Dismiss"), hereby files this Memorandum of Law in Opposition and states as follows:

**INTRODUCTION**

Plaintiff filed its Complaint in the instant case on or about October 7, 2011, requesting relief for (1) Tortious Interference with Contractual Relations, (2) Tortious Interference with Business Relationship, (3) Defamation, and requesting (4) Injunctive and Declaratory Relief [ECF No. 1]. Defendants, by and through Counsel, sought and were afforded an extension of time to file a response to Plaintiff's Complaint [ECF Nos. 5 & 7]. Plaintiff and Defendants have submitted their Joint Scheduling Report [ECF No. 9], and each has filed their respective Certificate of Interested Parties and Corporate Disclosure Statement [ECF Nos. 10 & 11].

1

Defendants filed a Motion to Dismiss, along with an Affidavit of Geoffrey Byruch (hereinafter referred to as "Defendants' Affidavit") as their response to the Plaintiff's Complaint asserting (1) that there is no Personal Jurisdiction over the Defendants, (2) in the alternative, this action should be transferred to the United States District Court for the Southern District of New York, and (3) Count IV of Plaintiff's Complaint should be Dismissed [ECF Nos. 8 & 8-1]. Plaintiff now files this Memorandum of Law in Opposition and attaches as Exhibit "A" hereto a copy of the Affidavit of George Mesa, Sr. (hereinafter referred to as "Plaintiff's Affidavit").  Plaintiff hereby requests this Honorable Court deny Defendants' Motion to Dismiss, with prejudice.

### STATEMENT OF FACTS

1.      At all times material to this cause, Plaintiff, CSI, is a Florida corporation registered with the State of Florida, with its principal place of business located at 12540 NW South River Drive Medley, Miami, FL 33178. (Complaint, ¶ 5; Plaintiff's Affidavit ¶ 3).

2.      At all times material to this cause, Defendant, HFP, upon information and belief, is a New York Limited Liability Company with its principal place of business located at 685 Fifth Avenue, 9th Floor, New York, NY 10022. (Complaint, ¶ 6; Plaintiff's Affidavit ¶ 6).

3.      Defendant HFP does conduct business with persons or entities in the state of Florida, is registered to do business in Florida, and a portion of HFP's overall revenue is from Florida-based clients/business partners. (Defendants' Affidavit ¶ 16-17).

4.      Representatives of Defendant HFP have been present in Florida on previous occasions for purposes concerning equipment purchase and to discuss various potential business opportunities. (Plaintiff's Affidavit ¶ 16).

5.      At all times material to this cause, Defendant, BYRUCH, upon information and belief, has been employed by HFP and is a New Jersey resident, maintaining his domicile and holding his primary state citizenship within the State of New Jersey. (Complaint, ¶ 7; Plaintiff's Affidavit ¶ 8).

6.      Upon information and belief, that Defendant BYRUCH has potentially, at some time, lived or resided or had ties within the state of Florida, specifically in either in Boca Raton, Florida or Deerfield Beach, Florida. (Plaintiff's Affidavit ¶ 9).

7.      CSI is in the business of providing advance thermal processing systems including, but not limited to, plasma-based elemental reclamation technology for use, among other purposes, in

recovering precious and noble metals from complex ore concentrates.  CSI designs, engineers and fabricates steel structures and thermal equipment; including, but not limited to, thermal processing chambers, isothermal reactors, pressure vessels, heat recovery systems, plasma arc reactors, and other energy sector equipment and processing systems.  Along with its principal place of business in Miami, Florida, CSI has also has satellite joint relationship facilities in Hitchcock, TX, and in Niagara Falls, Canada. (Complaint, ¶ 8).

8.      On or about August 31, 2010, CSI entered into an Equipment Design Build Engineer and Fabricate Contract with Worldwide Mining Partners, LLC (hereinafter "WMP"), whereby WMP was to contract with CSI to design, build, engineer and fabricate seven (7) plasma-based metallurgic recovery units to be strategically placed at WMP precious metal mining locations throughout the United States and Mexico. The contract price was quoted at a price of Forty-Seven Million Dollars ($47,000,000.00 USD). (Complaint, ¶ 9; Plaintiff's Affidavit ¶ 10).

9.      Subsequently, CSI entered into negotiations with the President of WMP, Jerry Pane, to build an additional three (3) plasma-based metallurgic recovery units to be placed at additional WMP precious metal mining locations. The contract price for these second-generation plasma-based systems would be at the price of Twenty-One Million Dollars ($21,000,000.00 USD). (Complaint, ¶ 10; Plaintiff's Affidavit ¶ 11).

10.     In the month of March, 2011, HFP, by and through its then-Chief Executive Officer ("CEO"), approached WMP to offer a business relationship in which WMP would provide high-grade, precious metal ore concentrate to a client of HFP that was engaged in recovering precious metal through the use of plasma-based technology.  (Complaint, ¶ 11; Plaintiff's Affidavit ¶ 12).

11.     HFP's then-CEO made further communications with WMP's President, whereby he disclosed that HFP had raised public funds for one of its clients in the precious metal recovery business and that communication with a client's chief science officer, known as Dr. John Voorhees, had gone silent and Mr. Voorhees could not be reached.  (Complaint, ¶ 12).

12.     Additionally, HFP inquired of WMP's President, Jerry Pane, as to whether WMP would be willing to enter into an agreement with HFP to ensure a sufficient feedstock of precious metal concentrate if the ore concentrate HFP was holding was insufficient to yield a value to repay its client's outstanding debt instruments.  (Complaint, ¶ 13; Plaintiff's Affidavit ¶ 14).

13.     Based upon information and reasonable belief, WMP declined HFP's offer and stated that it was pursuing a contract with CSI to build multiple plasma-based metallurgic recovery systems. (Complaint, ¶ 14; Plaintiff's Affidavit ¶ 15).

14.     On or about March 2011, HFP's then-CEO contacted CSI's President and asked if he would talk with WMP and try to convince WMP to agree to work with HFP's client that had a potential problem.  (Complaint, ¶ 15; Plaintiff's Affidavit ¶ 17).

15.     CSI's President acknowledged the plight of HFP, but respectfully declined to use any of his social equity to leverage its relationship with WMP to convince WMP to do business with an HFP client in need.  (Complaint, ¶ 16).

16.     Defendant, HFP, as a licensed investment brokerage firm and operating as a broker/dealer with other clients which are pursuing the same technological goals and with intimate knowledge of each other, possessed certain and definite knowledge that Plaintiff, CSI, was actively negotiating a contract to design and sell seven (7) additional advanced thermal processing systems to WMP that CSI would design, along with its design team partners, engineer and fabricate seven upgraded plasma-based metallurgic recovery systems to be placed at mining locations as per WMP's designation.  (Complaint, ¶ 17; Plaintiff's Affidavit ¶ 18-19).

17.     In or about June 2011, HFP went through a change of its Chief Executive Officer ("CEO"), at which time BYRUCH obtained the CEO position at HFP.  (Complaint, ¶ 18; Plaintiff's Affidavit ¶ 20).

18.     Based upon information and reasonable belief, BYRUCH, in his capacity as CEO of HFP, once again directly contacted WMP's President and made an attempt to acquire an exclusive business relationship with WMP.  (Complaint, ¶ 19; Plaintiff's Affidavit ¶ 21).

19.     Based upon information and reasonable belief, BYRUCH, in his capacity as CEO of HFP, travelled to North Carolina to visit a plasma-based thermal processing facility that could potentially preform the thermal processing that HFP desired for its client.  (Complaint, ¶ 20; Plaintiff's Affidavit ¶ 22).

20.     Based upon information and reasonable belief, the purpose of BYRUCH's trip to North Carolina was to create a relationship with a chief plasma physicist to utilize in performing plasma-based thermal processing.  (Complaint, ¶ 21; Plaintiff's Affidavit ¶ 23).

21.     BYRUCH, in his capacity as CEO of HFP, tried to convince WMP President, Jerry Pane, to do business with one of HFP's clients and that it was a real emergency.  (Complaint, ¶ 22; Plaintiff's Affidavit ¶ 24).

22.     WMP declined to assist HFP and cited in specific the business relationship it had and was further developing with CSI for the purpose to process precious metal ore concentrate from mines that were owned by WMP.  (Complaint, ¶ 23; Plaintiff's Affidavit ¶ 25).

23.     WMP stated that, absent the business it had with CSI to build and process, it would have entertained a co-venture agreement with HFP's client, but, at this time, it was overwhelmed with the business it had before it.  (Complaint, ¶ 24).

24.     Based upon information and reasonable belief, BYRUCH, in his capacity as CEO of HFP, with knowledge and malice, made numerous false and defamatory statements about CSI to WMP and other persons and/or other entities including, but not limited to, Joseph Spano of U.S. Precious Metals, and various employees of HFP.  (Complaint, ¶ 25; Plaintiff's Affidavit ¶ 26).

25.     On or about August 30, 2011, BYRUCH, in his capacity as CEO of HFP, approached Jerry Pane, President of WMP, at a charity event at the Jacob Javits Convention Center in New York, NY, whereby BYRUCH approached Mr. Pane and made various statements concerning CSI.  (Complaint, ¶ 26; Plaintiff's Affidavit ¶ 27).

26.     BYRUCH, in his capacity as CEO of HFP, with knowledge and malice, made numerous false and defamatory statements to the President of WMP, Jerry Pane, about CSI, including that CSI is only a website and not a "real business," that CSI has no experience in steel fabrication, and that CSI is not qualified to design, fabricate or construct the equipment that WMP sought to purchase under a prior existing contract and an ancillary contract in negotiations at that time (Complaint, ¶ 27-28; Plaintiff's Affidavit ¶ 28).

27.     Further, BYRUCH, with knowledge and malice, in his capacity as CEO of HFP, stated to the President of WMP, Jerry Pane, that CSI's President, George Mesa, Sr., is a fraud and has no experience in steel fabrication, and that CSI's President, George Mesa, Sr., is not qualified to fulfill the contract with WMP or any future contacts.  (Complaint, ¶ 29-30; Plaintiff's Affidavit ¶ 29).

28.     BYRUCH, with knowledge and malice, in his capacity as CEO of HFP, made numerous false and defamatory statements about CSI to the President of WMP, Jerry Pane, including, but not limited to, that CSI does not have a fabrication facility, that CSI does not have any

experience in steel fabrication, that CSI is a complete "fraud," and that WMP is being defrauded by continuing to do business with CSI and George Mesa, Sr.  (Complaint, ¶ 31; Plaintiff's Affidavit ¶ 30).

29.     By his actions, BYRUCH, in his capacity as CEO of HFP, attempted to develop a business relationship with WMP at the cost of CSI's business relationship, business contracts, and further anticipated business between the parties.  (Complaint, ¶ 32; Plaintiff's Affidavit ¶ 31).

30.     By his actions, BYRUCH, in his capacity as CEO of HFP, made the aforementioned false and defamatory statements for the purpose of derailing agreements between WMP and CSI and ancillary contractual negotiations that would work against BYRUCH's plan to collaborate in a business endeavor with WMP.  (Complaint, ¶ 33; Plaintiff's Affidavit ¶ 32).

31.     In the alternative, even if BYRUCH, in his capacity as CEO of HFP, had no true plans to pursue a business endeavor with WMP in the long-term, the false and defamatory statements about CSI and its President, George Mesa, Sr., were to serve no other purpose than to derail and obfuscate the contractual relationship between WMP and CSI.  (Complaint, ¶ 34; Plaintiff's Affidavit ¶ 33).

32.     Based upon information and reasonable belief, BYRUCH, in his capacity as CEO of HFP, initiated numerous phone conversations with WMP asserting that CSI is not qualified to build a plasma system, lacks the fundamental knowledge and know-how to fulfill its contractual obligations, and that WMP and its funding source would be better off ending the relationship with CSI and its co-venture partner, Plasma Arc, and pursue a new joint relationship with BYRUCH and HFP.  (Complaint, ¶ 35; Plaintiff's Affidavit ¶ 34).

33.     BYRUCH, in his capacity as CEO of HFP, made numerous phone calls to WMP executives to meet with Defendants for purposes of furthering Defendants' scheme to obfuscate, circumvent and intentionally cause WMP to terminate contractual obligations with Plaintiff. (Complaint, ¶ 36; Plaintiff's Affidavit ¶ 35).

34.     As a result of Defendants' malicious intent and numerous intentional communications of false and derogatory statements and acts of contractual interference, WMP has terminated and canceled the contract by and between CSI and WMP for the seven (7) advanced thermal processing systems as a direct result of the tortious and defamatory statements told by Defendants to WMP.  (Complaint, ¶ 37).

35.   By the actions of HFP and BYRUCH, aimed at CSI, a Florida Corporation, CSI has incurred an injury within the state of Florida, which includes a loss of contract with WMP which was quoted at a price of $47,000,000 USD. (Plaintiff's Affidavit ¶ 36).

36.   Further, as a result of Defendants' malicious intent and numerous intentional communications of false and derogatory statements and acts of contractual interference, WMP has ceased any further contractual negotiations by and between the CSI and WMP for the three (3) ancillary advanced thermal processing systems as a direct result of the tortious and defamatory statements told by Defendants to WMP.  (Complaint, ¶ 38).

37.   By the actions of HFP and BYRUCH, aimed at CSI, a Florida Corporation, CSI has incurred an injury within the state of Florida, which includes a loss of further business relationships with WMP, including further contractual negotiations for the three (3) ancillary advanced thermal processing systems, which was agreed to carry a contract price of $21,000,000.00 USD. (Plaintiff's Affidavit ¶ 37).

38.   By the actions of HFP and BYRUCH, aimed at CSI, a Florida Corporation, CSI has incurred an injury within the state of Florida, has been defamed, and incurred immeasurable damages from the loss of prospective business from other third parties due to Defendants conduct and statements. (Plaintiff's Affidavit ¶ 38).

## MEMORANDUM OF LAW IN OPPOSITION

### I.   Personal Jurisdiction over the Defendants pursuant to Florida's Long-Arm Statute

In a diversity action, a federal court can exercise personal jurisdiction over a non-resident Defendant as permitted by the long-arm statute of the forum state.[1]  Courts strictly interpret the Florida long-arm statute, Fla. Stat. § 48.193; therefore, the party invoking jurisdiction has the burden of proving that personal jurisdiction exists.[2]  A Plaintiff merely needs to present enough

---

[1] *eLandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1327 (S.D. Fla. 2009) (quoting Rexam Airspray, Inc. v. Arminak, 471 F. Supp. 2d 1292, 1297-98 (S.D. Fla. 2007))

[2] *Id.*

evidence to withstand a motion for a directed verdict to make a prima facie showing that personal jurisdiction exists.[3]

The Defendant must challenge the Plaintiff's allegations of personal jurisdiction by pleadings or declarations if the Plaintiff pleads sufficient facts to make a prima facie case that personal jurisdiction exists.[4]  Once the Plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the Defendant to challenge Plaintiff's allegations by affidavits or other pleadings.[5]

If the Defendant successfully challenges the Plaintiff's claims, then the Plaintiff must support its jurisdictional allegations with evidence rather than relying on the factual allegations in the complaint.[6]  But, where the Plaintiff's complaint and supporting evidence conflict with the Defendant's affidavits, the court must construe all reasonable inferences in favor of the Plaintiff.[7]  Similarly, on a Motion to Dismiss, the Court must find any uncontroverted facts alleged in the Plaintiff's Complaint to be true.[8]

### a.  Fla. Stat. § 48.193(1)(b)

As its first basis of personal jurisdiction over the Defendants in this matter, Plaintiff has alleged that personal jurisdiction is proper pursuant to § 48.193(1)(b), Florida Statutes (2001). (Complaint, ¶ 2).  Both the United State District Courts for the Southern District and Middle District of Florida in recent opinions have found personal jurisdiction proper over out of state Defendants committing tortious acts out of state that cause injury in Florida.[9]

---

[3] *See id.*; *see, e.g., Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986).

[4] *Id*; *see, e.g., Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1296 (11th Cir. 2009); *Rexam*, 471 F. Supp. 2d at 1298.

[5] *Id*; *see Polski*, 795 F.2d at 972.

[6] *Id*.

[7] *Id*; *see, e.g., Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted).

[8] *Id*; *see Coca-Cola Foods v. Empresa Comercial Internacional de Frutas S.A.*, 941 F. Supp. 1175, 1178 (M.D. Fla. 1996).

[9] *See eLandia*, 690 F.Supp.2d 1317; *Enviracarbon, Inc. v. Couch*, No. 6:10–cv–1886–Orl–35DAB, 2011 WL 4501058, at *2 (M.D. Fla. June 20, 2011); *Seminole Transportation Specialists, Inc. v. PDM Bridge, LLC, et. al.*, No. 8:09-cv-1885-T-23MAP, 2009 WL 3822773 (M.D. Fla. Nov. 16, 2009) ("[Fla. Stat. 48.193] is interpreted as permitting the exercise of

In *eLandia, International, Inc. v. Ah Koy*, 690 F.Supp.2d 1317, 1329 (S.D. Fla. 2010), the Court discussed Fla. Stat. § 48.193(1)(b) and its interpretation as it pertains to tortious acts occurring outside the state of Florida[10]:

> The Eleventh Circuit has consistently applied the broader construction of subsection 1(b) and **found personal jurisdiction over someone who commits a tortious act outside the state that results in harm inside the state**. Id. at 1216 (citing Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 257 (11th Cir. 1996); Sun Bank, N.A. v. E.F. Hutton & Co., 926 F.2d 1030, 1033-34 (11th Cir. 1991)). We are bound to follow the Eleventh Circuit's well established line of cases that apply the broader construction of subsection 1(b) because the Florida Supreme Court has not issued a decision rejecting the Eleventh Circuit's interpretation. See Posner, 178 F.3d at 1217. Therefore, under the Eleventh Circuit's construction of the elements required for jurisdiction under section 48.193(1)(b), **this statute permits jurisdiction over a non-resident defendant who commits a tort outside of the state that causes injury inside the state.** See also Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008) (citing Posner, 178 F.3d at 1216).[11]

In their Motion to Dismiss, Defendants pose a rather brief response to the jurisdictional allegation under Fla. Stat. § 48.193(1)(b), stating, in sum, that there is no basis for personal jurisdiction because a "communication must have been made into Florida." (Motion to Dismiss at 11).  The statements by Defendants in their Motion to Dismiss as well as the contents in the Affidavit submitted by Plaintiff do little to challenge the application of the long-arm statute under Fla. Stat. § 48.193(1)(b).  Defendants fail to address the tortious actions outside the state that caused an injury in the state of Florida.  Specifically, (1) the loss of a contract in an amount of $47 million due to Defendants' tortious interference with contractual relations and (2) the loss of prospective contract anticipated in an amount of $21 million due to Defendants' tortious interference with business relations, both of which are injuries in Florida to a Florida corporation.  It appears from their Motion to Dismiss that Defendants would urge this court to

---

personal jurisdiction if the 'foreign tortious act cause[d] injury within the forum' even though the tortious act occurred outside Florida." (citing New Lenox Indus., Inc. v. Fenton, 510 F.Supp.2d 893, 902 (M.D. Fla. 2007)))

[10] *eLandia*,  690 F.Supp.2d at 1329.

[11] *Id*. (Emphasis added).

adopt a narrow reading of Fla. Stat. § 48.193(1)(b), even though case law dictates that a broader construction under subsection (1)(b) should be applied.[12]

The damages sustained by the Plaintiff herein are similar to the damages sustained in *eLandia*. In *eLandia*, the Court stated:

> **If an individual tortiously interferes with a business relationship outside of Florida that causes injury in Florida, the individual is subject to personal jurisdiction under the Florida long-arm statute.** See Lehigh Tech., Inc. v. Farrah, 2:08-cv-53-FtM-29SPC, 2009 U.S. Dist. LEXIS 4838, 2009 WL 179672, at 5 (M.D. Fla. Jan. 23, 2009).
>
> Plaintiff eLandia alleges that Steamships **refused to purchase eLandia's shares in Datec PNG because Defendants intentionally and maliciously interfered with this business relationship.** [D.E. 4 at 31]. **eLandia also contends that it has suffered monetary damages because of Defendants' tortious conduct.** Id. **These allegations are sufficient to show on a prima facie basis that Defendants all committed a tort that caused eLandia, a company with a principal place of business in Florida, to suffer harm in the state of Florida.** See Lehigh Tech., 2009 U.S. Dist. LEXIS 4838, 2009 WL 179672, at 5 (concluding plaintiff adequately alleged a claim of tortious interference by stating defendant sent defamatory and threatening letters to third parties in other states).[13]

In *Lehigh Techs., Inc. v. Farrah*,[14] the Court also exercised personal jurisdiction over the Defendants.  The Court stated:

> Florida Statute Section 48.193(1)(b) "permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." Licciardello, 544 F.3d at 1283 (citing Posner v. Essex Ins. Co., 178 F.3d 1209, 1216 (11th Cir. 1999)).
>
> The Amended Complaint alleges in Counts I, IV, V, VI, VII and IX that Farrah committed a variety of tortious acts (on his own behalf and on behalf of the Farrah Group and Titan Polymers) from Michigan, which injured Lehigh in Florida. Among other things, Lehigh claims that Farrah made numerous misrepresentations from Michigan to Lehigh in Florida by telephone and fax, **engaged in tortious interference with Lehigh's business relations by sending defamatory and threatening letters to**

---

[12] *See id.*

[13] *Id.* at 1331-1332. (Emphasis added).

[14] *Lehigh Techs., Inc. v. Farrah*, No. 2:08-cv-53-FtM-29SPC, 2009 WL 179672, at *5 (M.D. Fla. Jan. 23, 2009).

third parties in other states (such as Michigan, Texas, and South Carolina), misappropriated Lehigh's trade secrets, and engaged in unfair competition and trademark infringement in violation of the Lanham Act. Defendants deny the veracity of some of these allegations but do not deny engaging in telephone and fax communications into Florida regarding the activities set forth in the Amended Complaint. Lehigh has adequately alleged the elements of the torts named in Counts I, IV, V, VI, VII and IX, and has alleged that defendants' actions relating to these counts have caused harm to Lehigh in Florida. Thus, the Court concludes that plaintiff has satisfied the Florida long-arm statute as to Counts I, IV, V, VI, VII and IX.[15]

As is illustrated from the case law above, this Court has jurisdiction over the Defendants pursuant to Fla. Stat. § 48.193(1)(b), Florida's long-arm statute.  While the Defendants herein are not residents of the state of Florida, they committed one or more intentional acts outside the state that directly caused injury in the state of Florida to a company that is registered and holds its principle place of business in the State of Florida.[16]  As was the case in *Enviracarbon*, where the Defendants devoted a substantial portion of the Motion to the argument that "no tortious conduct occurred in Florida," the Defendants in the present case devote a substantial portion of their Motion to the argument that no "communication" was made into Florida. [Motion to Dismiss at 11].   Further, as was the case in *Lehigh Techs.*, the Defendants herein engaged in tortious interference with CSI's business relationships (as well as contractual relationships) by communicating defamatory statements to third parties in other states.[17]

As noted herein, the Eleventh Circuit has uniformly held that the physical presence of a Defendant in Florida is not required under this statute, provided that the tort causes an injury in Florida.  Further, the Eleventh Circuit has recognized that intentional torts, including tortious interference, have been more likely to satisfy the requirements of Fla. Stat. § 48.193(1)(b) than torts involving negligence.[18]   The Court in *Enviracarbon* also held that it may exercise

---

[15] *Id.*

[16] *See Enviracarbon, Inc. v. Couch*, No. 6:10–cv–1886–Orl–35DAB, 2011 WL 4501058 (M.D. Fla. June 20, 2011).

[17] *See Lehigh Techs., Inc. v. Farrah*, No. 2:08-cv-53-FtM-29SPC, 2009 WL 179672 (M.D. Fla. Jan. 23, 2009).

[18] *See Enviracarbon, Inc. v. Couch*, No. 6:10–cv–1886–Orl–35DAB, 2011 WL 4501058 (M.D. Fla. June 20, 2011); *see also Posner*, 178 F.3d at 1217 n.9.

jurisdiction over a claim of defamation because it arose from the same jurisdiction generating event as the related tort claims alleged.[19]   For these reasons, the Plaintiff respectfully requests that this Honorable Court reject the Defendant's contention that there is no basis for personal jurisdiction over the Defendants under Fla. Stat. § 48.193(1)(b).

### b.   Fla. Stat. § 48.193(1)(a)

As its second basis of personal jurisdiction over the Defendants' in this matter, Plaintiff has pled that personal jurisdiction is proper pursuant to § 48.193(1)(a), Florida Statutes (2001). (Complaint, ¶ 2).   Specifically Plaintiff has alleged that "HFP is 'operating, conducting, engaging in, or carrying on a business venture' in Florida."  (Complaint, ¶ 2).

Defendants have cited the case of *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*,[20] which provides for certain factors to be considered in determining whether an entity is "operating, conducting, engaging in, or carrying on a business venture" pursuant to Fla. Stat. § 48.193(1)(a).  In *Horizon*, the Court addressed the factors as follows:

> "In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000).  Factors relevant, but not dispositive, to this analysis include **the presence and operation of an office in Florida**, see Milberg Factors, Inc. v. Greenbaum, 585 So.2d 1089, 1091 (Fla.Dist.Ct.App.1991), the **possession and maintenance of a license to do business in Florida**, see Hobbs v. Don Mealey Chevrolet, Inc., 642 So.2d 1149, 1153 (Fla.Dist.Ct.App.1994), the **number of Florida clients served**, see Milberg Factors, Inc., 585 So.2d at 1091, and the **percentage of overall revenue gleaned from Florida clients**, see id.; Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 628 (11th Cir. 1996).[21]

---

[19] *Enviracarbon, Inc. v. Couch*, No. 6:10–cv–1886–Orl–35DAB, 2011 WL 4501058 (M.D. Fla. June 20, 2011); *see Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.*, 322 F.App'x 852, 854 (11th Cir. 2009) (holding that if the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction generating event).

[20] *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162 (11th Cir. 2005).

[21] *Id*. at 1167. Emphasis added.

In their Motion to Dismiss, Defendants address the first, third, and fourth factors listed in *Horizon*, but fail to address the second factor, "possession and maintenance of a license to do business in Florida." By its own admission in its Affidavit, "HFP is registered to do business in every State in the United States." (Defendants' Affidavit, ¶ 16). From this, it is reasonable to infer that "every State" includes the state of Florida. Thus, the second factor appears to have been met. At this time, it does not appear that the first factor, "presence and operation of an office in Florida," is present, as the Defendant has stated in its Affidavit that "HFP has never had an office outside the State of New York." (Defendants' Affidavit, ¶ 12). However, the third and fourth factors are present, "number of Florida clients served" and "percentage of overall revenue gleaned from Florida clients." Defendant has admitted in his Affidavit that HFP conducts some of its business with persons or entities in Florida and does receive a percentage of overall revenue from Florida clients. (Defendants' Affidavit, ¶ 17). Without discovery, Plaintiff is unable to verify the veracity of the Defendants' Affidavit that only a small portion of its overall revenue and business is conducted with persons or entities in Florida. However, Plaintiff is aware of instances where HFP has traveled to Florida on more than one occasion for business purposes within this state. (Plaintiff's Affidavit ¶ 16). It is important to note that these factors, while relevant, are not dispositive, and not all need to be present in order to determine whether a Defendant is carrying on a business for purposes of the long-arm statute.[22]

Furthermore, from an examination of the "negative citing references" for *Horizon*, the case of *Gulf Power Co. v. Coalsales II, LLC*.[23] In *Gulf Power*, the Court distinguished its facts from that of *Horizon*, finding that, while the Defendant Coalsales II, LLC did not maintain an office in Florida, served only three Florida clients, and obtained only a relatively small percentage of its overall revenue from those clients, other factors weighed in favor of finding personal jurisdiction, including the fact that Coalsales personnel traveled to Florida on numerous occasions for business purposes.[24] In the present case, while Defendants do not maintain an office in Florida, other factors weigh heavily in favor of the position that Defendants are

---

[22] *See id.*

[23] *Gulf Power Co. v. Coalsales II, LLC*, No. 3:06cv270/MCR, 2008 WL 563484 (N.D. Fla. Feb. 27, 2008).

[24] *See id*, at *5, fn. 15.

"operating, conducting, engaging in, or carrying on a business venture" in the state of Florida within the ambit of Fla. Stat. § 48.193(1)(a).  These factors include the fact that Defendant HFP is registered to do business in Florida, HFP representatives traveled to Florida for business purposes on numerous occasions, Defendant BYRUCH is believed to have lived, resided, or had ties with the state of Florida, HFP operates a website that is freely accessible to individuals and entities within Florida, and HFP, potentially through BYRUCH as well as others, serves Florida-based clients to which a portion of its overall revenue may be attributed.

For these reasons, the Plaintiff respectfully requests that this Honorable Court reject the Defendant's contention that there is no basis for personal jurisdiction over the Defendants under Fla. Stat. § 48.193(1)(a).

## II.    Exercising Personal Jurisdiction over the Defendants does not violate the Due Process Clause of the Fourteenth Amendment

If personal jurisdiction exists under either subsection (1)(b) or (1)(a) of Fla. Stat. 48.193, the Court must then determine whether personal jurisdiction satisfies the requirements of the Due Process Clause.[25]

In the present case, the Defendants committed intentional acts/torts against the Plaintiff that harmed the Plaintiff in the forum state (Florida).  As the Court explained in *eLandia*, this is enough to satisfy due process:

> The Due Process analysis requires a "substantial connection" with the forum. Even a single act can give rise to such a connection to support the exercise of personal jurisdiction. See, e.g., Burger King, 471 U.S. at 475. **It is thus well recognized that intentional torts are classic examples of such acts that give rise to jurisdiction over a non-resident defendant who has no other contacts with the forum state.** Licciardello, 544 F.3d at 1285. The Eleventh Circuit indeed held in Licciardello that **the commission of an intentional tort by a nonresident defendant expressly aimed at a resident, the effects of which were suffered by the resident in the forum state, satisfies the "effects test" established by the Supreme Court in Calder v. Jones, 465 U.S. 783, 789-90, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). Id. at 1288. The "effects test" provides that due process is satisfied when the plaintiff brings suit in the forum here (sic) the "effects" or the "brunt of the harm" caused by the defendant's intentional tortious activity was suffered.** *Id.* at 1285-87.

---

[25] *eLandia*, 690 F.Supp.2d at 1337.

> **Consequently, the Due Process clause is not violated when a court exercises jurisdiction over a defendant's intentional tortious conduct, committed outside of the forum state but calculated to cause injury in the forum state, because the defendant must have reasonably anticipated being haled into court in the forum state regarding those actions.**[26]

The United States Supreme Court, in *Calder v. Jones*,[27] has explained that, unlike a person "charged with mere untargeted negligence," the perpetrator of an intentional tort can reasonably anticipate being haled into a forum where he knows his actions could have a "potentially devastating impact" upon the targeted party.[28]  Thus, personal jurisdiction is proper under the "effects" test if the Plaintiff alleges that the Defendants (1) committed an intentional tort, (2) the intentional tort was aimed at the Plaintiff, and (3) the Plaintiff felt the effects of the intentional tort in the forum state.[29]

The Defendants in the present case (1) committed two intentional torts – tortious interference with contractual relations and tortious interference with business relationship, (2) these intentional torts were aimed at the Plaintiff, CSI, and (3) the effects of the intentional tort were felt by the Plaintiff in the state of Florida.  As was the case in *Enviracarbon*, the Defendants committed these intentional acts, upon information and belief, in order to set up a rival technology venture in North Carolina that could complete with Plaintiff and usurp Plaintiff's business contracts and business relationship with Worldwide Mining Partners and others.  In addition, while Defendants are not residents of the state of Florida, Defendant HFP, according to its own affidavit, is registered to do business in the state of Florida, and representatives of Defendant HFP have, on more than one occasion, been present in south Florida conducting business for various purposes.  (Plaintiff's Affidavit, ¶ 16).

---

[26] *Id*. at 1338. Emphasis added.

[27] *Calder v. Jones*, 465 U.S. 783, 789-790 (1984).

[28] *Id.*

[29] *Enviracarbon, Inc. v. Couch*, No. 6:10–cv–1886–Orl–35DAB, 2011 WL 4501058 (M.D. Fla. June 20, 2011); *see also Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008); *Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.*, 322 F.App'x 852, 854 (11th Cir. 2009).

The exercise of personal jurisdiction over the Defendants also comports with "fair play and substantial justice" under the due process analysis.[30]

> With respect to the intentional tort claims, we must also evaluate whether exercising jurisdiction would comport with "fair play and substantial justice" under the due process analysis. We thus consider the burden on Defendants of litigating in Florida, Florida's interest in adjudicating the dispute, Plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute. E.g., Licciardello, 544 F.3d at 1284. **We readily find that the Florida based Plaintiff, injured by intentional misconduct of Defendants expressly aimed at Florida, should not have to travel half a world away to obtain a remedy.** Additionally, **Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct by non-residents causing injury in Florida.**[31]

In the present case, the forum state (Florida) has a significant interest in adjudicating the dispute, as the Defendants committed intentional acts against a Florida Corporation (Plaintiff) that damaged Plaintiff. Moreover, the Plaintiff has a direct interest in obtaining relief and resolving the dispute in Florida, and given the Defendants' intentional and injurious misconduct aimed at the Florida based Plaintiff, the Defendants should be compelled to appear in a Florida Court. Further, Defendant HFP (and likely Defendant BYRUCH) has sought and obtained business from Florida-based clients / business partners, doing so on a continuous basis, and has reaped financial benefit from this state. Given all of the foregoing, "fair play and substantial justice" is not compromised by having these Defendants answer in Florida to their wrongful, intentional actions aimed at a Florida-based corporation which resulted in injury in Florida to the Florida corporation.

## III.    Transfer to the United States District Court for the Southern District of New York is Not Proper

As an alternative argument to their Motion to Dismiss, Defendants herein move to transfer this cause to the United States District Court for the Southern District of New York. The Defendants have cited the factors listed in footnote 8 in *Cauff Lippman & Co. v. Apogee Fin.*

---

[30] *See eLandia*, 690 F.Supp.2d at 1339.

[31] *Id*. Emphasis added.

*Group, Inc.*[32] as the basis for transfer.  These factors, cited from *Cordis Corp. v. Siemens-Pacesetter, Inc.*,[33] are: (1) whether the proposed transferee court is one which the action "might have been brought" and (2) whether the transfer is warranted "for the convenience of the parties and witnesses, [and] in the interests of justice."[34]

As for the first prong, an action "might have been brought" in a proposed transferee court if that court has jurisdiction over the subject matter of the action, if venue is proper there, and if the Defendant is amenable to process issuing out of the transferee court.[35]  In the present case, it is unlikely venue would be proper in the court which Defendants propose the action be transferred: the Southern District of New York.  In order for venue to be proper in diversity actions, an action is to be brought either (1) in a judicial district where any Defendant resides, if all Defendants reside in the same state, (2) where a substantial part of the events or omissions giving rise to the claim arose, or (3) where the Defendants are subject to personal jurisdiction, if there is no district in which the action may otherwise be brought.[36]

First, the Southern District of New York is not a "judicial district where any Defendant resides, if all Defendants reside in the same state."  Defendant BYRUCH resides in New Jersey, and Defendant HFP is a New York-based entity.  As such, the present case is not a situation where "all Defendants reside in the same state."   Likewise, while some statements were made by Defendant BYRUCH in New York, statements are also believed to have been made in New Jersey, and via telephone or other communications in and out of unknown states.  In addition, as stated in the Complaint, BYRUCH, in his capacity as CEO of HFP, travelled to North Carolina to visit a plasma-based thermal processing facility and to create a relationship with a chief plasma physicist to utilize in performing plasma-based thermal processing (Complaint, ¶ 21-22).  It is believed that certain statements may have been made in North Carolina at that time.  Further, it is believed that BYRUCH also travelled to California on occasion, where statements

---

[32] *Cauff Lippman & Co. v. Apogee Fin. Group, Inc.*, 745 F. Supp. 678 (S.D. Fla. 1990).

[33] *Cordis Corp. v. Siemens-Pacesetter, Inc.*, 682 F.Supp. 1200 (S.D. Fla. 1987).

[34] *Id.*

[35] *Miot v. Kechijian*, 830 F.Sup. 1460, 1465 (S.D. Fla. 1993) (citing Windmere Corp. v. Remington Products, 617 F.Supp. 8, 10 (S.D. Fla. 1985).

[36] 28 U.S.C.A. § 1391(a).

may have been made, or in other presently unknown states that BYRUCH or other representatives from HPF may have traveled.  In sum, "acts or omissions" giving rise to the claims in the Complaint spanned across several states and jurisdictions and were not substantially arising from one locale.  At best, it would be premature to assume that a "substantial part" of the events arose in the state of New York, much less in the Southern District.  Finally, it is unknown as to whether BYRUCH would personally be subject to jurisdiction in New York, as he resides in New Jersey.

Assuming, *arguendo*, that this case could have originally been brought in the Southern District of New York, the Court must still weigh various factors in order to determine whether a transfer to a more convenient forum is justified under 28 U.S.C. 1404(a).[37]  The doctrine of forum non conveniens should be applied sparingly, and only when the Defendant's concerns are very strong.[38]  The key to a forum non conveniens analysis is convenience; thus, no one factor is given controlling weight in the balancing process.  The factors are (1) convenience of parties, (2) convenience of witnesses, (3) relative ease of access to sources of proof, (4) availity of process to compel presence of unwilling witnesses, (5) cost of obtaining presence of witnesses, and (6) public interest.[39]  While the Plaintiff's choice of forum is not controlling, it is an additional factor to be considered by the Court in determining the most convenient forum for the case.[40]

Defendants' ultimate argument in favor of transferring jurisdiction to the Southern District of New York is that the Defendants locale is in New York, and two witnesses that BYRUCH made statements to are in New Jersey.  Defendant HFP is the only one of these four that are located in New York, the rest reside in New Jersey.  Quite simply, New Jersey is not New York, regardless of the proximity.  Regardless, other witnesses that may be presented at trial or may be deposed in this case reside in areas outside of New York and New Jersey.  These witnesses include George Mesa, Sr. and other officers and directors of Canadian Steel, Inc., which reside in Florida, and individuals located in North Carolina that were present when

---

[37] *Miot v. Kechijian*, 830 F.Sup. at 1466 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504 (1947)).

[38] *Id.* (citing Soghanalian v. Soghanalian, 693 F.Supp. 1091, 1095 (S.D. Fla. 1988)).

[39] *Id.* (citing Hammond North Assoc., Ltd. v. ABG Financial Services, Inc., 708 F.Supp. 334, 335 (S.D. Fla. 1989).

[40] *Id.* (citing Windmere Corp. v. Remington Products, 617 F.Supp. 8, 10 (S.D. Fla. 1985).

BYRUCH, in his capacity as CEO of HFP, travelled to North Carolina to visit a plasma-based thermal processing facility.  In addition, there are other potential witnesses that may be located in other states, such as California, that are presently unknown.  Furthermore, as stated in previous sections of this Memorandum, citing *eLandia* – Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct by non-residents causing injury in Florida, and a Florida-based Plaintiff, injured by intentional misconduct of Defendants expressly aimed at Florida, should not have to travel half a world away to obtain a remedy.  Given this, there is a strong public interest in keeping this action in the Southern District of Florida and the Plaintiff's choice of forum should not be disturbed in this instance, as Defendants have not shown that such a transfer is outweighed by other considerations.[41]

## IV.    Count IV Should Not be Dismissed

Defendants, in their Motion to Dismiss, also request this Court dismiss Count IV of the Complaint.  As a basis for this request, Defendants first state that Plaintiff has failed to state a claim upon which relief can be granted for Injunctive Relief. (Motion to Dismiss at 17).  In its Motion, Defendants pose as their only argument for such the first element for injunctive relief (irreparable harm if the injunction is not entered) as the basis for their request for dismissal. (Motion to Dismiss at 17).

Under Fed. R. Civ. P. 12(b)(6), a Court must determine whether a Plaintiff sets forth sufficient factual allegations to establish a claim upon which relief can be granted. In evaluating whether Plaintiffs have stated a claim, the Court must determine whether the pleading satisfies Fed. R. Civ. P. 8(a)(2).  Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this standard, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face.[42]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[43]  Further, in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court

---

[41] *See eLandia*, 690 F.Supp.2d 1317; *see also Gulf Power Co. v. Coalsales II, LLC*, at *6.

[42] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[43] *See id.*

must construe the complaint in the light most favorable to the Plaintiff and accept all well-pled factual allegations as true.[44]

In the present case, Defendants examine only the first element of injunctive relief, irreparable harm, in their argument for dismissal of Plaintiff's fourth claim for relief.  Defendants cite only a portion of paragraph 61 of Plaintiff's Complaint, that Plaintiff will sustain "irreparable damage to his business and has no other adequate remedy at law"; however Defendants fail to cite the remainder of the sentence, "to prevent repeated unfounded interference with his contracts and business relationships by Defendants" and the footnote contained in the Complaint, that further explains the basis for injunctive relief in addition to the damages Plaintiff seeks:

> "Although a portion of this cause of action is for damages, CSI has other contracts with this client and capital funding partner, and additionally has several contracts throughout the world.  This is why injunctive relief is also appropriate as CSI's business can be irreparably harmed in perpetuity if the interference with its funders and physicists continues."

Complaint, ¶ 61, fn. 1.

The damages in this case have accrued as to WMP, a contracted party of CSI and one which CSI had business relations, but it is the "further acts" that Defendants may engage which interfere with CSI's existing business, including its funding group, plasma engineers and physicists, that is the basis for the injunctive relief sought herein.  This has been pled in Plaintiff's Complaint, and apparently overlooked by the Defendants.  As such, Plaintiff has stated a claim upon which relief may be granted, and Defendants' Motion to Dismiss to that effect should be denied.  Likewise, declaratory relief is also proper in this cause, as there is basis to avoid the accrual of avoidable damages which may arise in the future should the Defendants continue on the pattern of conduct described herein.  As such, Defendants' Motion to Dismiss to that effect should also be denied.

**WHEREFORE**, Plaintiff respectfully requests that this Court deny the Defendants Motion to Dismiss, with prejudice, in all respects, and award any such and further relief that this Court deems just and proper.

---

[44] *See Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 2009).

Case No. 11-23650–CIV-ALTONAGA/SIMONTON

Dated: December 5, 2011                    Respectfully Submitted,


                                           ___s/ John C. Webb, Esq._____
                                           John C. Webb, Esq. (Fla. Bar No. 48601)
                                           johnwebblegal@gmail.com
                                           P.O. Box 60832
                                           Fort Myers, FL 33906
                                           Telephone: 941-404-5313
                                           Fax: 1-888-465-7258
                                           Attorney for Plaintiff Canadian Steel, Inc.


## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served via transmission

of Notices of Electronic Filing generated by CM/ECF on December 5, 2011, on all counsel or

parties of record on the Service List below.


                                           s/ John C. Webb, Esq._____

                                           Attorney Name


## SERVICE LIST

Solomon B. Genet, Esq.
Florida Bar No. 617911
sgenet@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221
Attorney for Defendants HFP Capital Markets, LLC and Geoffrey Byruch