**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 11-23650-CIV-ALTONAGA/Simonton**

**CANADIAN STEEL, INC.**,

Plaintiff,

vs.

**HFP CAPITAL MARKETS, LLC**,
*et al.*,

Defendants.
______________________________/

**ORDER**

**THIS CAUSE** came before the Court on Defendants, HFP Capital Markets, Inc. ("HFP"), and Geoffrey Byruch's ("Byruch['s]") Motion to Dismiss the Amended Complaint, or in the Alternative to Transfer ("Motion") [ECF No. 36], filed on April 30, 2012. Plaintiff, Canadian Steel, Inc. ("CSI"), initiated this action by filing a first complaint on October 7, 2011. CSI filed an amended complaint ("Complaint") [ECF No. 24] on December 22, 2011, alleging four claims for: (1) tortious interference with contractual relations, (2) tortious interference with business relationship, (3) defamation, and (4) injunctive and declaratory relief. The Court closed this matter while a motion to transfer was pending before the Judicial Panel on Multidistrict Litigation, which motion was denied on April 16, 2012. In the present Motion, Defendants seek to dismiss or transfer this action pursuant to 28 U.S.C. sections 1404 and 1406, and Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (*See* Mot. 1). CSI filed a Memorandum of Law in Opposition . . . ("Response") [ECF No. 40] on May 17, 2012. On May 29, 2012, Defendants filed their Reply Memorandum of Law . . . ("Reply") [ECF No. 42]. The Court has carefully reviewed the parties' written submissions and applicable law.

## I. BACKGROUND[1]

This case involves claims arising out of alleged interference with contractual relations, interference with prospective business advantage, and intentional remarks and actions to CSI's contractual partners. (*See* Compl. ¶ 1). At issue is a "contract to design, build, engineer, and fabricate seven (7) Plasma-based Metallurgic Recovery Systems" ("Recovery Systems"). (*Id*.). CSI alleges Defendants interfered with CSI's relationships with third parties, including its "capital finance funding partner and vertical precious metal feedstock supplier." (*Id*.).

Plaintiff, CSI, is a Florida corporation. (*See id*. ¶ 7). Defendant, HFP, is a New York limited liability company with a principal place of business in New York City. (*See id*. ¶ 8). Defendant, Byruch, is a HFP employee and New Jersey resident. (*See id*. ¶ 9). CSI provides advanced thermal processing systems, including "plasma-based elemental reclamation technology for use, among other purposes, in recovering precious and noble metals from complex ore concentrates." (*Id*. ¶ 10). In addition to its principal place of business in Miami, Florida, CSI has "satellite joint relationship facilities" in Hitchcock, Texas, and Niagara Falls, Canada. (*Id*.). HFP is a licensed investment brokerage firm and broker/dealer. (*See id*. ¶ 28).

On August 31, 2010, CSI entered into an Equipment Design Build Engineer and Fabricate Contract ("Contract") with Worldwide Mining Partners, LLC ("WMP"), whereby WMP was to work with CSI to "design, build, engineer and fabricate" seven Recovery Systems at WMP precious-metal mining locations in the United States and Mexico. (*Id*. ¶ 20). The contract was for forty-seven million dollars. (*See id*.). CSI then entered negotiations with the President of WMP, Jerry Pane ("Pane"), to build an additional three Recovery Systems, for

[1] The factual background is taken from the allegations in the Complaint. For the purposes of the Motion brought in part under Federal Rule 12(b)(1), the allegations are accepted as true to the extent they are uncontroverted by Defendants' affidavits. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).

$21,000,000.00. (*See id.* ¶ 21).

In March 2011, HFP, through its then-CEO, approached WMP to offer a business opportunity in which WMP would provide high-grade, precious-metal ore concentrate to one of HFP's clients. (*See id.* ¶ 22). HFP's then-CEO told Pane that HFP had raised public funds for one of its clients, and that communication with the client's chief science officer, Dr. John Voorhees ("Voorhees"), had "gone silent," and Voorhees could not be reached. (*Id.* ¶ 23). HFP asked Pane whether WMP would enter an agreement with HFP to ensure sufficient feedstock of precious metal concentrate if the ore concentrate HFP held was insufficient to repay its client's outstanding debt. (*See id.* ¶ 24). WMP declined HFP's offer, stating that it was pursuing a contract with CSI to build multiple Recovery Systems. (*See id.* ¶ 25).

In March 2011, HFP's then-CEO contacted CSI's President and asked if he would try to convince WMP to agree to work with HFP's client, which had a "potential problem." (*Id.* ¶ 26). CSI's President "acknowledged the plight of HFP" but refused to attempt to convince WMP to do business with an HFP client. (*Id.* ¶ 27). HFP, through its work as a broker/dealer with other clients, knew for certain CSI was actively negotiating a contract to design and sell seven Recovery Systems to WMP. (*Id.* ¶ 28). In June 2011, Defendant Byruch became the new CEO of HFP. (*See id.* ¶ 29). Byruch, as HFP CEO, again directly contacted Pane to attempt to acquire an exclusive business relationship with WMP. (*See id.* ¶ 30). Byruch traveled to North Carolina to meet a chief plasma physicist and visit a facility that could potentially perform the thermal processing HFP desired for its client. (*See id.* ¶¶ 31–32). Byruch tried to convince Pane to do business with one of HFP's clients, stating that it was an emergency. (*See id.* ¶ 33). WMP declined, citing its specific business relationship with CSI. (*See id.* ¶ 34). WMP stated that it would have entertained a co-venture with HFP's client absent WMP's business with CSI, but

WMP was overwhelmed as it was. (*See id.* ¶ 35). Byruch then allegedly made "numerous false and defamatory statements about CSI to WMP" and others, including Joseph Spano of U.S. Precious Metals and various HFP employees. (*Id.* ¶ 36).

On August 30, 2011, Byruch approached Pane at a charity event in New York, New York and made various statements concerning CSI. (*See id.* ¶ 37). Byruch told Pane CSI was only a website and not a "real business." (*Id.* ¶ 38). Byruch also stated to Pane that CSI had no experience in steel fabrication and was not qualified to design, fabricate, or construct the equipment WMP sought to purchase under contracts existing or under negotiation with CSI at the time. (*See id.* ¶ 39). Byruch said CSI's President, George Mesa, Sr. ("Mesa"), is a fraud with no experience in steel fabrication and unqualified to fulfill any contract with WMP. (*See id.* ¶¶ 40–41). Byruch also told Pane CSI does not have a fabrication facility, was a complete "fraud," and was defrauding WMP. (*Id.* ¶ 42). Byruch initiated numerous phone calls with WMP executives asserting that CSI was not qualified to build a plasma system and lacked fundamental knowledge to fulfill its contractual obligations, and that WMP would be better off ending its relationship with CSI. (*See id.* ¶¶ 46–47).

As a result of Defendants' actions, WMP terminated its contract with CSI. (*See id.* ¶ 48). Furthermore, as a result of Defendants' behavior, WMP ceased any further contractual negotiations with CSI for three additional "ancillary advanced thermal processing systems," which had an agreed contract price of $21,000,000. (*Id.* ¶ 51).

## II. ANALYSIS

### A. Whether the Court May Assert Personal Jurisdiction Over Defendants

Federal Rule of Civil Procedure 12(b)(2) allows a defending party to move to dismiss a claim for relief by asserting the defense of lack of personal jurisdiction. *See* FED. R. CIV. P.

12(b)(2). A challenge to personal jurisdiction presents a two-step inquiry for the Court. A federal court may properly exercise personal jurisdiction over a non-resident defendant only if two requirements are satisfied: (1) the state long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). Thus, if the applicable state statute governing personal jurisdiction is satisfied, the Court must then determine whether sufficient "minimum contacts" exist to satisfy the due process requirements of the Fourteenth Amendment, including "traditional notions of fair play and substantial justice." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam) (citing *Sculptchair*, 94 F.3d at 626); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The extent of the applicable long-arm statute is governed by Florida law, and federal courts must construe it as would the Florida Supreme Court. *See Sculptchair*, 94 F.3d at 627 (citation omitted). Absent an indication that the Florida Supreme Court would hold otherwise, the Court is bound by the decision of the intermediate Florida courts. *See id.* (citation omitted). Furthermore, the Florida long-arm statute must be strictly construed. *See id.* (citation omitted).

Where the trial court does not conduct an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff initially "must establish a *prima facie* case of personal jurisdiction over the nonresident defendant." *Cable/Home*, 902 F.2d at 855 (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988); *Delong Equip. Co. v. Washington Mills Abrasiv Co.*, 840 F.2d 843, 845 (11th Cir. 1988)). Under Florida law, "[a] plaintiff seeking to obtain jurisdiction over a non-resident defendant initially need only allege jurisdiction." *Posner*, 178 F.3d at 1214 (citing *Electro Eng'g Prods. Co. v. Lewis,* 352 So. 2d 862, 864 (Fla. 1977)).

"Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction." *Future Tech.*, 218 F.3d at 1249 (quoting *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991)); *see also Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). If a plaintiff pleads sufficient material facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to challenge the plaintiff's allegations by affidavits or other competent evidence. *Future Tech.*, 218 F.3d at 1249. The plaintiff then bears the burden of proving jurisdiction by affidavits, testimony or documents "when the non-resident defendant raises a meritorious defense to personal jurisdiction through affidavits, documents or testimony." *Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 294 (S.D. Fla. 1997); *Kim v. Keenan*, 71 F. Supp. 2d 1228, 1231 (M.D. Fla. 1999) ("If defendants sufficiently challenge plaintiff's assertions, then plaintiff must affirmatively support his or her jurisdictional allegations, and may not merely rely upon the factual allegations set forth in the complaint."). In the case of conflict in the parties' affidavit and deposition evidence, "the court must construe all reasonable inferences in favor of the plaintiff." *Cable/Home*, 902 F.2d at 855 (citing *Morris*, 843 F.2d at 492; *Delong*, 840 F.2d at 845).

The Florida long-arm statute contains two provisions that confer personal jurisdiction over a non-resident defendant. One provision, Florida Statute section 48.193(2), confers general jurisdiction if a defendant's contacts with Florida are sufficiently pervasive. *See* FLA. STAT. § 48.193(2). General jurisdiction arises from a non-resident defendant's contacts with the forum that are unrelated to the cause of action being litigated. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). The other, Florida Statute section 48.193(1), confers specific jurisdiction if a claim "arises from" a defendant's specific forum-related contacts. FLA.

STAT. § 48.193(1). "Although the term 'arising from' is somewhat broader than the concept of proximate cause, under Florida law there must nevertheless be some 'direct affiliation,' 'nexus,' or 'substantial connection' between the cause of action and the activities within the state." *Sun Trust Bank v. Sun Int'l Hotels Ltd.*, 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001) (citations omitted).

CSI alleges several bases for general and specific jurisdiction over Defendants. The Court begins with CSI's allegation that the Court has specific personal jurisdiction over Defendants pursuant to Florida Statute section 48.193(1)(b), due to Defendants' allegedly intentional tortious acts aimed at CSI in Florida. (*See* Compl. ¶ 4). Section 48.193(1)(b) provides:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> * * *
>
> (b) Committing a tortious act within this state.

FLA. STAT. § 48.193(1)(b).

The parties disagree as to what it means to commit a tortious act "within this state." CSI asserts it is enough to allege Defendants' tortious acts were "aimed at Plaintiff, a Florida corporation, and resulted in injury in Florida to Plaintiff." (Compl. ¶ 4). Defendants do not dispute that CSI suffered an injury in Florida. What the parties dispute is whether CSI's injury in Florida is sufficient to establish a *prima facie* case for jurisdiction over Defendants under section 48.193(1)(b). Defendants contend that injury in Florida is not enough, and to the extent CSI's claim is based on communications by Defendants, there must be allegations the communications

were made "into Florida." (Mot. 9) (emphasis in original). It is undisputed the Complaint contains no such allegations of communications into Florida.

The Court finds CSI alleges a *prima facie* case for jurisdiction over Defendants pursuant to section 48.193(1)(b), on the basis of its allegations that it suffered injury in Florida from Defendants' intentional torts. In so finding, the Court follows the clear weight of binding Eleventh Circuit authority on this question. In particular, the Court is bound by the Eleventh Circuit's pronouncement in *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008), that section 48.193(1)(b) of the Florida long-arm statute permits jurisdiction over an out-of-state defendant who commits an out-of-state tort, so long as that tort caused an injury in Florida. *See* 544 F.3d at 1283 (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999)). The Florida Supreme Court has not settled the question conclusively, but has openly acknowledged the Eleventh Circuit's adoption of this broad reading of the long-arm statute. *See Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1206 n.6 (Fla. 2010) ("We do not decide the broader issue of whether injury alone satisfies the requirement of section 48.193(1)(b). We do recognize that the federal courts have adopted this broad construction . . . ."); *Wendt v. Horowitz*, 822 So. 2d 1252, 1253 n.2 (Fla. 2002) (similar). Accordingly, the Court follows the consistent guidance of the Eleventh Circuit in interpreting section 48.193(1)(b) broadly. *See, e.g.*, *Licciardello*, 544 F.3d at 1283; *Brennan v. Roman Catholic Diocese of Syracuse New York, Inc.*, 322 F. App'x 852, 855 (11th Cir. 2009) ("Intentional torts . . . may support the exercise of personal jurisdiction over the non-resident defendant who has no other contacts with the forum.").

The authority Defendants cite, by contrast, is not binding on this Court. Defendants cite *Canadian Steel Fabricators, Ltd. v. Garner*, No. 11-20039-CV, 2011 WL 4424431 (S.D. Fla.

Sept. 22, 2011), as controlling authority establishing that injury in Florida is not sufficient to warrant personal jurisdiction in this state arising out of the tort causing that injury. (*See* Reply 1). Nevertheless, in its analysis of section 48.193(1)(b), the court in *Canadian Steel Fabricators* did not examine the Eleventh Circuit precedent discussed above, which compels the outcome of the Court's analysis. The Court therefore does not find *Canadian Steel Fabricators* changes its conclusion here.

Since the Court finds CSI pleads sufficient facts establishing a *prima facie* case for personal jurisdiction under the long-arm statute, the Court must turn to evidence presented by Defendants to challenge Plaintiff's allegations. *See Future Tech.*, 218 F.3d at 1249. The Court has reviewed the various affidavits and other evidence submitted with the Motion and finds them irrelevant to the jurisdictional issue under section 48.193(1)(b) — whether Plaintiff suffered an injury in Florida at the hands of Defendants' allegedly intentional torts. *See Posner*, 178 F.3d at 1215, 1217 (finding affidavit of defendant "of little significance to the jurisdictional question" where it "fail[ed] to counter [assertions regarding injury in Florida] with anything more than conclusory denials of contacts with the state of Florida"). The Court therefore finds that the long-arm statute is satisfied.

The next step in the inquiry is to determine whether personal jurisdiction satisfies due process, with respect to minimum contacts with the forum and fair play considerations. *See Future Tech.*, 218 F.3d at 1249. Defendants cite *Sun Bank, N.A. v. E.F. Hutton & Co., Inc.*, 926 F.3d 1030 (11th Cir. 1991), and *Montes v. Capitol Records, Inc.*, No. 02-CV-23074, 2003 WL 23163127 (S.D. Fla. Oct. 31, 2003), as cases where personal jurisdiction was improper on due process grounds, although permissible under the long-arm statute. (*See* Reply 2). Both of these cases, however, preceded the Eleventh Circuit's pronouncement on the subject in *Licciardello*, in

which the court stated that "so long as it creates a substantial connection with the forum, even a single act can support jurisdiction," and that "[i]ntentional torts are such acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." 544 F.3d at 1285 (internal quotation marks and citations omitted); *see also Brennan*, 322 F. App'x at 856 (similar). The *Licciardello* court found that the defendant who allegedly committed an intentional tort targeting the Florida-based plaintiff had sufficient contacts with Florida for due process purposes, holding that "[t]he Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over [the defendant] because his intentional conduct in his state of resident was calculated to cause injury to [the plaintiff] in Florida. [The defendant] cannot now claim surprise at being haled into court here." 544 F.3d at 1288 (internal citations omitted). With respect to "fair play and substantial justice," the court found that a Florida plaintiff, injured by "intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy." *Id*. "Additionally, Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Id*. (citations omitted).

Because CSI has alleged intentional torts by Defendants against it, a Florida corporation, the Court finds personal jurisdiction over Defendants comports not only with the Florida long-arm statute, but also with due process. Because the Court finds personal jurisdiction proper under section 48.193(1)(b), the Court need not address the remaining bases for jurisdiction proffered by Plaintiff. The Court declines to grant the Motion on the basis of lack of personal jurisdiction.

**B. Whether This Action Should Be Transferred**

Defendants argue in the alternative that should the Court find jurisdiction proper, the action should be transferred to the United States District Court for the Southern District of New York under 28 U.S.C. sections 1404 and 1406. (*See* Mot. 12). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under section 1406, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. The previous discussion on personal jurisdiction renders section 1406 inapplicable. *See id.* § 1391(b)(2) (providing for venue where "a substantial part of the events or omissions giving rise to the claim occurred"); *Fiore v. Walden*, 657 F.3d 838, 859 (9th Cir. 2011) ("In a tort action, the locus of the injury is a relevant factor" in section 1391(b)(2) analysis) (citation and quotation marks omitted). The Court therefore turns to whether transfer is appropriate under section 1404.

CSI disputes that this action might have been brought in New York, or that the interest of justice would be served by transfer. (*See* Resp. 16–18). CSI further states that the Judicial Panel on Multidistrict Litigation ("Panel") addressed "strikingly similar (if not identical)" arguments by Defendants in favor of transfer to the Southern District of New York, and the Panel found these arguments unpersuasive in denying Defendants' motion in its April 16, 2012 order [ECF No. 28]. (*Id.* 17). Defendants state, nonetheless, that the Panel's decision has no bearing on the issue before the Court, because that decision was about whether factual questions shared by various actions were sufficiently complex or numerous to justify centralization, which is irrelevant to section 1404. (*See* Reply 7). The Court agrees with Defendants that the Panel's

decision is not dispositive of whether transfer is appropriate under section 1404.

An action "might have been brought" in a court, under section 1404(a), "if that court has jurisdiction over the subject matter of the action, if venue is proper there, and if the defendant is amenable to process issuing out of the transferee court." *Miot v. Kechijian*, 830 F. Supp. 1460, 1465 (S.D. Fla. 1993) (citation omitted). There is no dispute here as to the Southern District of New York's jurisdiction over the subject matter of this action, and Defendants concede their amenability to process there. (*See* Mot. 16–17). Nonetheless, the parties do dispute whether venue is proper in that district. Venue is proper in a diversity action in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). CSI asserts, and Defendants never dispute, that Defendants do not all reside in New York. (*See* Resp. 17). Nevertheless, CSI acknowledges that the communications alleged in the Complaint that form the basis of CSI's claims were made in New York, New York, to recipients in the same city. (*See id.*). The Court finds this sufficient to satisfy section 1391(b)(2). This action might have been brought in the Southern District of New York.

The Court therefore turns to whether the interest of justice would be served by transfer. The factors relevant to this inquiry include:

> (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of service of process to compel the presence of unwilling witnesses, (5) the cost of obtaining the presence of witnesses, (6) the public interest, and (7) all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002); *see also Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). In this case, the convenience of CSI favors Florida, while the convenience of Defendants appears better served by New York. On balance, the Court does not find this factor to favor either forum in particular. Defendants further assert that third-parties WMP and Pane are in Nevada and New Jersey, not Florida. (*See* Mot. 12). Third-party witnesses would therefore have to travel in any event. While New Jersey may be closer to New York than Florida, Nevada is less so. Overall, this factor does not greatly favor venue in New York.

More importantly, however, the Court finds that some of the considerations for the personal jurisdiction inquiry are relevant here — namely the public interest and the fact that a Florida company was allegedly intentionally targeted. Florida's interest in adjudicating intentional torts affecting its residents favors venue in Florida. *See Licciardello*, 544 F.3d at 1288. Courts have found that the site of injury caused by an alleged intentional tort merits consideration in the venue transfer analysis. *See Seminole Transp. Specialists, Inc. v. PDM Bridge, LLC*, No. 8:09-cv-1885-T-23MAP, 2009 WL 3822773, at *3 (M.D. Fla. Nov. 16, 2009) (holding venue in Florida proper where defendant's alleged intentional torts caused injury in Florida to plaintiff's reputation and business relationships). Having weighed the various interest-of-justice factors, the Court declines to transfer this action to the Southern District of New York.

**C. Whether the Complaint Fails to State a Claim**

The Complaint contains claims for (1) tortious interference with contractual relations, (2) tortious interference with business relationship, (3) defamation, and (4) injunctive and declaratory relief. Defendants contend that all of these fail to state a claim.

Under Federal Rule of Civil Procedure 12(b)(6), "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). But pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950; *see also Sinaltrainal*, 578 F.3d at 1260 ("[U]nwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.") (quotation marks and citation omitted).

*a. Counts I and II for Tortious Interference*

Defendants assert that Counts I and II should be dismissed, because the Complaint

contains allegations suggesting Defendants engaged in the alleged tortious actions in the interest of promoting their own relationship with their client. (*See* Mot. 14). Defendants contend that under Florida law, a claim for tortious interference may not lie "where the action complained of is undertaken to safeguard or promote one's financial or economic interest." (Resp. 14 (quoting *Barco Holdings, LLC v. Terminal Inv. Corp.*, 967 So. 2d 281, 293 (Fla. 3d DCA 2007))).

Plaintiff CSI argues, however, that Defendants' motivation must be pleaded as an affirmative defense and is not appropriately considered on a motion to dismiss. (*See* Resp. 18–19 (citing *Melbourne Medical Lab. v. Lab Corp.*, 722 So. 2d 962 (Fla. 5th DCA 1998); *Stewart Title Guaranty Co. v. Title Dynamics, Inc.*, No. 2:04CV316FTM33SPC, 2005 WL 2548419 (M.D. Fla. Oct. 11, 2005))). CSI further points out that *Barco Holdings* involved a decision on a motion for summary judgment, not a motion to dismiss for failure to state a claim. (*See id.* 19).

The decision in *Stewart Title* is pertinent to the instant action. In *Stewart Title*, the defendant moved to dismiss a claim for tortious inference for failure to state a claim on the basis that the defendant's actions were protected by the economic interest privilege invoked here by Defendants. *See* 2005 WL 2548419, at *4. The court stated that while "a claim properly extinguished by an affirmative defense must be dismissed, . . . some affirmative defenses are more impregnable than others." *Id.* While statutes of limitations stand on the more absolute end of the spectrum, "[t]he economic interest affirmative defense is not one of those impregnable defenses." *Id.* The *Stewart Title* court relied *McCurdy v. Collins*, 508 So. 2d 380 (Fla. 1st DCA 1987), which states that in the face of a qualified privilege, the plaintiff must prove malice, directly or indirectly. *See* 508 So. 2d at 382. "Where the circumstances surrounding the statement are in dispute, the question of qualified privilege is a factual determination for resolution by the jury." *Id.* The court in *Stewart Title* concluded that since the plaintiff had

alleged malice in the complaint, the plaintiff "reserve[d] the ability to set forth facts which may overcome the economic interest privilege," and that dismissal of the claim for the existence of a conceivable affirmative defense would be premature. 2005 WL 2548419, at *5.

It would be equally premature to dismiss Plaintiff's tortious interference counts at this stage. Without making a conclusive finding as to whether Defendants have a qualified economic privilege affirmative defense on the basis of the Complaint, the Court finds that in any event, CSI must be given the opportunity to present evidence of the malice that CSI alleges in the Complaint. It is inappropriate to dismiss Counts I and II on the basis of a potential affirmative defense involving questions of fact.

*b. Count III for Defamation*

Defendants state that the Complaint "pleads the defamation claim out of Court" because it includes allegations about HFP's relationship with a client. (Mot. 16). According to Defendants, the HFP client referred to throughout the Complaint is an entity called Metals, Milling & Mining, LLC ("MMM"). (*See id.* 3). Defendants aver that Pane, the President of WMP, owns a 5% interest in MMM and had a financial interest in the allegedly defamatory statements he received from Defendants, due to MMM's agreement with CSI to "assist in operating a plasma-based precious metal processing system, and because MMM wire transfers had been used (unlawfully) to fund Plaintiff's business with WMP." (*Id.* 16–17). Defendants cite the rule that an otherwise defamatory statement may be privileged where it is made for "bona fide commercial purposes where the interest to be protected is the recipient's." *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984) (citations omitted).

Defendants' motion to dismiss Count III relies on Defendants' own proffer of facts in the Motion regarding HFP's client and Pane's interest, clearly beyond the four corners of the

Complaint. It is evident that this issue involves questions of fact, and dismissal at this stage is premature. As is the case with tortious interference, claims for defamation may be defeated by qualified privileges, which may in turn be overcome depending on the factual circumstances. The Florida Supreme Court in *Nodar* held that an otherwise defamatory statement may be conditionally privileged, so long as that privilege is not abused. *See* 462 So. 2d at 809. "[T]he mode, manner, or purpose of the communication would go to the question of abuse or forfeiture of the privilege." *Id.* Furthermore, it is only where the circumstances surrounding a communication are "undisputed, or are so clear under the evidence as to be unquestionable," that the question of privilege becomes a question of law rather than fact. *Id.* at 810.

On this motion to dismiss, the Court can hardly find that all the circumstances surrounding the alleged defamatory communications are undisputed, particularly where Defendants rely on facts asserted in their own Motion. Moreover, even if the privilege were established, CSI must have the opportunity to prove Defendants' malice. "Where a person speaks upon a privileged occasion, but the speaker is motivated more by a desire to harm the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege, then it can be said that there was express malice and the privilege is destroyed." *Id.* at 811. The motion to dismiss Count III is denied.

*c. Count IV for Injunctive and Declaratory Relief*

Defendants state that Count IV of the Complaint for injunctive and declaratory relief should be dismissed for failure to state a claim. They contend the Complaint fails to allege any threat of future irreparable harm meriting injunctive relief, or avoidable future damages warranting declaratory relief. (*See* Mot. 18). With respect to an injunction, Defendants assert that to the extent CSI alleges it requires relief to prevent future interference with its business

relationships and contracts, money damages may satisfy these wrongs, so they are not irreparable. (*See id.* 19). Defendants further contend that the Complaint's allegations about future harm are speculative and lack any basis. (*See id.*). As for declaratory relief, Defendants state that the Complaint merely recites elements of the claim without supporting factual allegations. (*See id.* 20). Defendants assert that where a plaintiff's damages are already accrued, there is no need for a declaration of its rights to avoid accrual of further avoidable damages. (*See id.*).

The Eleventh Circuit has held, "[i]n order to receive declaratory or injunctive relief, plaintiffs must establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000). CSI notes that it alleges in the Complaint:

> Although a portion of this cause of action is for damages, CSI has other contracts with this client and capital funding partner, and additionally has several contracts throughout the world. This is why injunctive relief is also appropriate as CSI's business can be irreparably harmed in perpetuity if the interference with its funders and physicists continues.

(Compl. ¶ 75 n.1). At this stage of the litigation, these allegations regarding the impact on CSI's business are sufficient to support a claim for injunctive and declaratory relief. Defendants' position is that their alleged tortious acts were privileged. Should they be correct, nothing would prevent their acting in a similar manner to impact CSI's other related business, so long as Defendants continue to be protected by privilege. At their heart, CSI's claims turn on alleged injury to the core of its professional reputation. In the trademark context, injunctive relief is appropriate to protect against injury to business reputation, as such injury is not readily remedied at law. *See, e.g.*, *Laboratorios Roldan, C. por A. v. Tex Int'l, Inc.*, 902 F. Supp. 1555, 1569 (S.D. Fla. 1995). The motion to dismiss Count IV is denied.

## III. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Motion **[ECF No. 36]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of June, 2012.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record